IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

XINGWEN DONG,

    Petitioner,

v.                                                                            2:26-cv-00417-KG-JMR

DORA CASTRO, et al.,

    Respondents.

**TEMPORARY RESTRAINING ORDER**

This matter is before the Court on Xingwen Dong's motion for a Temporary Restraining Order ("TRO") under Federal Rule of Procedure 65(a). *See* Doc. 3. The Court entered an Order to Answer, directing the Government to respond within 10 days of service of the petition. Doc. 4. The Court held a hearing on the TRO application on February 26, 2026. For the reasons below, the Court issues a Temporary Restraining Order ("TRO") requiring the Government to release Mr. Dong.

*I.    Background*

Xingwen Dong is a 48-year-old Chineze citizen who entered the United States in 2024 at the California border not designated as a port of entry. Doc. 1 at 2; Draft Tr.[1] The Department of Homeland Security ("DHS") detained and charged him as removable for entering without inspection. *Id.* DHS released him on his own recognizance. *Id.* Mr. Dong has stable employment working in a kitchen and extensive family ties in New York (two siblings and nieces and nephews). Draft Tr. He has no criminal history. Doc. 2-1 at 5; Draft Tr.

---

[1] The Court's citation to the hearing transcript refers to the court reporter's original, unedited version. Any final transcript will contain more specific page and line numbers.

On December 3, 2025, Immigration and Customs Enforcement ("ICE") agents arrested Mr. Dong during a routine ICE check in at 26 Federal Plaza in New York City. *Id.* He is detained at the Otero County Processing Center and has not been afforded a bond hearing. *Id*.

Mr. Dong filed his habeas petition and TRO application on February 16, 2026. Docs. 1, 2. The Clerk of Court served the Government on February 17, 2026, under the Court's Standing Order. Doc. 3. Mr. Dong contends that his continued detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause. *See id.* at 7–8. He therefore seeks a writ of habeas corpus seeking release or, in the alternative, a bond hearing before an immigration judge. *See id.* at 10.

## II.     Standard of Review

A TRO "preserve[s] the status quo [ante]" before a final decision on the merits. *Resolution Trust v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). The status quo is "the last peaceable uncontested status…before the dispute developed." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 798 n.3 (10th Cir. 2019). A petitioner seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief," and that the balance of equities and public interest favor relief. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[A]ll four of the equitable factors weigh in" the petitioner's favor, *Sierra Club. v. Bostick,* 539 Fed. App'x 885, 888 (10th Cir. 2013), but "[t]he likelihood-of-success and irreparable-harm factors are the most critical." *People's Trust Fed. Credit Union v. Nat'l Credit Union*, 350 F. Supp. 3d 1129, 1139 (D.N.M. 2018). "[R]egardless of whether or not notice is provided," a TRO "should not exceed the maximum time allowed by" Rule 65, which is 28 days, "absent consent of the opposing party." *Isler v. New Mexico Activities*, 2010 WL 11623621, at *3 (D.N.M.).

*III.*     *Analysis*

For the reasons below, the Court concludes that (A) Mr. Dong is likely to succeed on the merits of his habeas petition, (B) he will suffer irreparable harm without injunctive relief, and (C) the balance of equities and the public interest favor relief.

    *A.*     *Mr. Dong is likely to succeed on the merits of his petition.*

Mr. Dong has established a likelihood of success on the merits of his (1) statutory claim and (2) Fifth Amendment due process claim.

    *1.*     *Mr. Dong is likely to succeed on his statutory claim.*

Mr. Dong is likely to succeed on his claim that his detention is governed by § 1226(a), not the mandatory detention provision of § 1225(b)(2)(A).  The INA establishes distinct detention regimes depending on whether a noncitizen is "seeking admission" to the United States or has already entered the country.  *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018).  Section 1225(b)(2)(A) applies to "applicant[s] for admission" who are "seeking admission" and are "not clearly and beyond a doubt entitled to be admitted."  In that circumstance, the statute provides that the noncitizen "shall be detained" during removal proceedings.  § 1225(b)(2)(A). "This provision mandates detention and affords no bond hearing."  *Pu Sacvin v. De Anda-Ybarra*, 2025 WL 3187432, at *1 (D.N.M.) (Gonzales, J.).

By contrast, § 1226(a) authorizes the arrest and detention, "on a warrant issued by the Attorney General," of noncitizens "pending a decision on whether [they are] to be removed." § 1226(a).  "Under federal regulations, noncitizens detained under this second detention regime are entitled to individualized bond hearings at the outset of detention."  *Pu Sacvin*, 2025 WL 3187432, at *1.  "Noncitizens who entered the country years earlier are not considered to be 'seeking admission,' and therefore fall under" § 1226(a), "rather than § 1225(b)(2)(A)."  *Id.* at

*3; *see also Barco Mercado v. Francis*, 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (collecting over 300 district-court decisions nationwide).

Because Mr. Dong had already affected an entry and was not seeking admission at the time of his arrest, § 1226(a) governs his detention. Mr. Dong entered the United States in 2024 and was arrested in Minneapolis, inside the United States. Mr. Dong has therefore shown a strong likelihood of success on his statutory claim.

        2.    *Mr. Dong is likely to succeed on his constitutional claim.*

Mr. Dong has also met his burden of showing a likelihood of success on his due process claim. The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Zadvydas*, 533 U.S. at 693. Given that § 1226(a) is controlling here, Mr. Dong "is entitled—as a right—to an individualized bond hearing." *Cortez-Gonzalez v. Noem*, 2025 WL 3485771, at *5 (D.N.M.). His redetention without such review "constitutes an ongoing violation of [his] right to due process." *Id.* Mr. Dong therefore meets his burden in demonstrating that he is likely to succeed on his due process claim.

    **B.**    *Mr. Dong will face irreparable harm without injunctive relief.*

Mr. Dong has met his burden of showing that his detention causes irreparable harm, because "infringement of a constitutional right" is per se irreparable harm. *Free the Nipple*, 916 F.3d at 805.

### C. The equities and public interest favor relief.

Finally, any burden on the Government to release Mr. Dong from custody and hold a pre-deprivation hearing is minimal compared to the harm that Mr. Dong is suffering in detention. While the Government has an interest in securing Mr. Dong's appearance at immigration proceedings, detention has been unnecessary to carry out that interest. Indeed, he was arrested in at a routine ICE check-in, which demonstrates that he is making an active effort to comply with his conditions of release. "Faced with a choice between minimally costly procedures and preventable human suffering," the "balance of hardships tips decidedly in [P]etitioner's favor." *Singh v. Andrews*, 2025 WL 1918679, at *7 (E.D. Cal.); *see also Domingo*, 2025 WL 2941217, at *4 (same). The public interest also weighs in Mr. Dong's favor; it is "not in the public's interest to allow unexplained detention." *Domingo*, 2025 WL 2941217, at *4.

### IV. Conclusion

This TRO restores and preserves the status quo ante pending further proceedings. IT IS THEREFORE ORDERED that:

1. Mr. Dong's request for a Temporary Restraining Order, Doc. 2, is granted.
2. The Government is ordered to release Mr. Dong within 24 hours of this order. Upon release, the Government may not subject Mr. Dong to post-release monitoring or supervision not in place before his detention.
3. The Government is restrained from redetaining Mr. Dong unless it demonstrates, by clear and convincing evidence at a pre-deprivation hearing before a neutral arbiter, that Mr. Dong is a danger or flight risk.
4. This Court has already ordered the Government to respond within ten days of service of the original petition. Doc. 4. Mr. Dong may file a reply within ten (10) days thereafter.

5. This order shall remain in effect for 28 days for good cause shown. *See* Fed. R. Civ. P. 65(b)(2).

6. Given the important constitutional rights at stake for Mr. Dong, the Court finds that no bond is required. *See Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003) (providing district courts with "wide discretion under Rule 65(c)" to determine "whether to require security").

IT IS SO ORDERED.

/s/ Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.